SO ORDERED.

SIGNED this 1 day of August, 2024.



_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

**IN RE:**

**DUPREE FARMS, LLC**

     **DEBTOR**

**CASE NO:**
**18-00216-5-JNC**
**CHAPTER 11**

_____

**DUPREE FARMS, LLC**

     **PLAINTIFF,**

**V.**

**PRODUCERS AGRICULTURE**
**INSURANCE COMPANY, D/B/A PRO AG,**

     **DEFENDANT.**

**AP NO. 19-00164-5-JNC**

**MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT**

Before the court is the renewed Motion for Summary Judgment filed by Producers Agriculture Insurance Company ("ProAg" or "Defendant") (A.P. Dkt. 128, the "Motion"). ProAg filed a memorandum in support of the Motion (A.P. Dkt. 129), and Plaintiff Dupree Farms, LLC ("Dupree Farms" or "Plaintiff") filed a response to the Motion (A.P. Dkt. 132, the "Response") along with a series of exhibits (A.P. Dkt. 133). ProAg filed a reply brief on September 27, 2023 (A.P. Dkt. 139, the "Reply").

A hearing in this matter was held on October 3, 2023. Kevin Sink and Wendell Hoskins, II appeared for Dupree Farms. Rebecca Redwine and Jeffrey Dilley appeared for ProAg.  On October 18, 2023, the matter was referred to mediation with the summary judgment motion held in abeyance.  On December 7, 2023, the mediator reported an impasse.  After deciding a threshold issue on subject matter jurisdiction (Order, A.P.  Dkt. 175), this matter is now ripe for disposition.

## **BACKGROUND**

This adversary proceeding involves a Whole-Farm Revenue Protection ("WFRP") Pilot Policy No. 2018-37-987-102949 (the "Policy") issued by ProAg to Dupree Farms on February 18, 2018. WFRP policies are a component of the federal crop insurance program, which is administered by the United States Department of Agriculture's Risk Management Agency ("RMA") and underwritten by the government-owned Federal Crop Insurance Corporation ("FCIC").[1]  The policies, however, are sold by private companies such as ProAg, and the RMA partners with those private companies, known as approved insurance providers, to deliver and administer the program. The findings herein are issued for purposes of consideration of the pending motion for summary judgement only.

Dupree Farms commenced a voluntary Chapter 11 bankruptcy case by filing its chapter 11 petition (BK Dkt. 1) on January 16, 2018 (the "Petition Date"), Case No. 18-00216-5-JNC (the "Bankruptcy Case").  Its Second Amended Plan of Reorganization dated March 12, 2019 (BK Dkt. 292, the "Plan"), was confirmed by order dated March 18, 2019 (BK Dkt. 297, the "Confirmation

---

[1]  "The Federal Crop Insurance Act, 7 U.S.C. § 1501 et seq., and corresponding regulations under Title VII, Chapter IV of the Code of Federal Regulations, govern the crop insurance policies at issue in this case. Such policies are written on standardized contracts promulgated and regulated by the Federal Crop Insurance Corporation ("FCIC"), a wholly owned government corporation managed by the Risk Management Agency of the U.S. Department of Agriculture." *Wanamaker Nursery, Inc. v. John Deere Risk Prot., Inc.*, 364 F. Supp. 3d 839, 842 (E.D. Tenn. 2019).

Order") following and incorporating the findings from the chapter 11 plan confirmation hearing conducted on March 7, 2019 (audio recording posted at BK Dkt. 288, the "Hearing Audio").

For all of crop year 2018, Dupree Farms operated under direct bankruptcy court supervision and jurisdiction. When the case was filed, the Debtor's ability to purchase crop insurance was in jeopardy because it had not paid a past year premium of about $100,000. On January 26, 2018, a week after the Petition Date, the Debtor filed an Emergency Motion to Use Cash Collateral (BK Dkt. 41) seeking court authority to borrow up to $4,386,321.25 from Ag Resource Management/Agrifund, LLC ("ARM"), with a second lien granted to Getsco, Inc. ("Getsco"), to fund its 2018 farming operations. At paragraph 23, page 7, the motion notices that obtaining 2018 crop insurance is a precondition of ARM financing.

The major prepetition secured lender, Regions Bank, objected (BK Dkt. 55) on the basis its prior liens on Debtor's assets were being unfairly primed. After three contested hearings (February 6 (audio at BK Dkt. 61), February 16 (audio at BK Dkt. 70), and February 23, 2018 (audio at BK Dkt. 76)), an Order Authorizing Use of Cash Collateral was entered on February 26, 2018 (BK Dkt. 78).[2]  Among other things, that order allowed payment of the $100,000 premium past due on the 2017 crop insurance policy from the borrowed funds, thereby enabling the Debtor to bind and obtain the Policy for 2018.

The Debtor farmed the entire 2018 crop year while in chapter 11. A preliminary insurance claim was communicated to ProAg in the fall of 2018, prior to the plan confirmation hearing.  A series of communications between ProAg ensued, resulting in ProAg determining that the Policy would pay an amount lower than allegedly promised by ProAg's agent at policy acquisition and as relied upon in Dupree Farms' 2018 planting decisions. The major prepetition creditors

---

[2] The Debtor's updated farm year operating budget and crop plan ultimately were not opposed, resulting in the entry of a final order approving the postpetition financing on March 5, 2018 (BK Dkt. 95).

(primarily Regions Bank and Getsco) were aware that litigation might be required. Dupree Farms filed an application to employ special litigation counsel (BK Dkt. 248), which was approved on January 18, 2019 (BK Dkt. 260), which order permitted the employment of attorney Kevin L. Sink to act as special counsel "with respect to claims against [ProAg] in connection with . . . claims or notices of loss . . . relating to Whole Farm Revenue Protection for 2017 and 2018."

Meanwhile, the chapter 11 case proceeded to plan confirmation on March 7, 2019 (the "Plan Hearing"). The record of that hearing reflects that counsel for Dupree Farms, Richard Sparkman, announced that prepetition secured creditor Regions Bank had changed its position and accepted the plan as modified, agreeing to defer the past due balance on its prepetition loan (i) for one year or (ii) until the 2018 crop insurance dispute resolved, whichever occurred first. In response, the court inquired whether the anticipated action against ProAg had been filed. Mr. Sparkman replied that an investigation and discussions were proceeding, that ProAg adjusters were formally reviewing the claim, and a final notification had not been rendered; in other words, litigation was contemplated but not yet ripe (Hearing Audio, 11:00 to 12:15). During cross examination conducted by Regions Bank counsel, the principal officer of Dupree Farms testified that if net proceeds were recovered from ProAg under the claim or as a result of litigation, those funds could be used to fund the plan, including the annual payments due to Regions Bank and Getsco (Hearing Audio, 48:50 to 49:40).

During the Plan Hearing, when discussing postpetition and postconfirmation financing, Mr. Sparkman reported, and a member-manager of the Debtor later confirmed in his testimony, that in the 2018 crop year (postpetition but preconfirmation), the Debtor attempted to farm 3,137 acres consisting of soybeans, sweet potatoes, tobacco, watermelons, and broccoli.  Dupree Farms operated throughout most of 2018 with an understanding, alleged to be based on ProAg agents'

4

assurances, that expanded coverage under the Policy would be in effect and extended to all of its 2018 crops, including rotation on the same farm acreage of the broccoli and watermelon crops during the 2018 crop year. Dupree Farms asserts it relied on the assurance of the ProAg agent that if it planted this specific crop mix in the specific rotation then it would qualify for the 1.35 "Expanded Operations Factor" as that term is defined in the Policy.[3]

The summer of 2018 turned out to be a notoriously tough farming year in eastern North Carolina due to a recurring cycle of drought and excessive rainfall. Dupree Farms lost most of its broccoli and watermelon rotational crops. Because the estate's 2018 farming operation failed to generate the expected farm revenue guaranteed (or thought by the Debtor to be guaranteed) under the Policy, Dupree Farms submitted a claim under the Policy expecting coverage at the 1.35 Expanded Operations Factor (Hearing Audio, 11:00 to 12:15).  In its letter dated November 16, 2018, (the "First Denial Letter"), ProAg first informed Dupree Farms of its position that the Policy must be read restrictively with respect to the maximum allowable Expanded Operations Factor applicable under the Policy and would be calculated at 1.17 rather than the 1.35 expected by Dupree Farms.

As of the Plan Hearing in March 2019, Dupree Farms reported that discussions with ProAg continued concerning the 2018 coverage dispute in an effort to resolve the matter short of litigation. The formal crop year 2018 claim of loss dated April 29, 2019, was labeled by ProAg as Claim No. 18011474.25 (the "Claim"). On May 31, 2019, Dupree Farms was notified that ProAg, using the lowered 1.17 expansion factor, had made a firm determination that the "Whole Farm Approved Revenue" was $4,581,522 with a corresponding "Insured Revenue" for Dupree Farms set at

---

[3] Expanded Operations Factor -- A factor that is used to calculate the expanded operation adjusted revenue for farm operations that are physically expanding.

$3,894,319.26, yielding a final indemnity payment of $691,557. Dupree Farms contested the ProAg conclusion, asserting coverage calculated at a 1.35 Expanded Operations Factor. It says the higher factor produces a total insurance recovery of $1,226,720, a difference of $535,163 when compared to the allowed $691,557. ProAg denies that it remains liable to Dupree Farms for 2018 crop loss claims for any additional amount.

 Dupree Farms initiated this postconfirmation adversary proceeding on November 11, 2019, by filing a complaint (A.P. Dkt. 1) seeking to recover damages from ProAg for the reduced insurance coverage under four state law causes of action, being negligent misrepresentation, intentional misrepresentation, unfair and deceptive trade practices, and punitive damages. ProAg answered (A.P. Dkt. 10) on January 30, 2020, denying any further liability. Neither party sought a jury trial. On November 5, 2019, Dupree Farms commenced a parallel arbitration proceeding against ProAg, as required under the Policy and implementing regulations (A.P. Dkt. 18, Demand for Arbitration Claim No 18011474, the "Arbitration"). On April 15, 2020, Dupree Farms and ProAg jointly submitted, and the court approved, a consent order (A.P. Dkt. 19) staying this adversary proceeding pending a decision in the Arbitration.

In the Arbitration, Dupree Farms and ProAg requested that the FCIC interpret which of their competing expansion factor interpretations should be utilized to calculate the limit of available insurance coverage under the Policy.[4]   The FCIC agreed with ProAg's position.  Because the FCIC interpretation is binding on the parties under 7 C.F.R. § 400.766(b)(2), ProAg submitted a motion for summary disposition. On September 10, 2021, the arbitrator granted that motion and entered a final award (A.P. Dkt. 38, the "Arbitration Award") in favor of ProAg upholding its

---

[4] An FCIC interpretation is distinct from an FCIC determination. *See Williamson Farm v. Diversified Crop Ins. Servs.,* 917 F.3d 247, 256 (4th Cir. 2019) ("[A]n FCIC *interpretation* of the meaning of disputed policy provisions is a different request -- one which arises at a different time and in a different proceeding -- than an FCIC determination that an agent failed to comply with the terms of the policy.")

claim calculations based on a 1.17 expansion factor. He further found that Dupree Farms had already received the full measure of indemnity payable under the Policy. However, the Arbitration Award specified, citing to FAD-211,[5] that the arbitrator was without authority to consider "extra-contractual" claims such as those grounded in "equitable estoppel," which the FCIC defines to include legal claims arising in tort such as misrepresentation, fraud, or negligence. *See* Arbitration Award at page 25, citing FAD-211 and FAD-282. The Arbitrator further notes, "Dupree's claim for 'any extra-contractual damages, including consequential damages and punitive damages, available in judicial review' are not within the scope of this arbitration as the Panel has no authority to consider those claims." Arbitration Award, at 28.

Following entry of the Arbitration Award, on October 19, 2021, Dupree Farms moved to amend (A.P. Dkt. 42) its original complaint to add an additional claim for "judicial review" as provided in Section 33(c) of the Policy. Shortly thereafter, on October 21, 2021, ProAg filed a motion to confirm the Arbitration Award (A.P. Dkt. 43) and a separate motion for summary judgment (A.P. Dkt. 44). Plaintiff responded in opposition to both motions (A.P. Dkts. 51 & 52). On January 6, 2022, the court confirmed the Arbitration Award (A.P. Dkt. 76, the "Arbitration Confirmation") to the extent the summary disposition determined ProAg had paid Dupree Farms the Policy's full indemnity limit. The Arbitration Confirmation, standing alone, does not bar "extra-contractual" claims outside the scope of the Arbitration Award as those matters are excluded from the arbitration process and can only be pursued in a court setting.

The court granted leave to amend to add a claim for "judicial review," not to review the Arbitration Award as to indemnity due under the Policy, but to allow compliance with the FSA

---

[5] FADs are Final Agency Determinations, which, according to the regulations are binding on participants in the Federal Crop Insurance Program.  7 C.F.R. § 400.766.  FADs are available on the USDA website at https://www.rma.usda.gov/Policy-and-Procedure/Final-Agency-Determinations (last accessed July 25, 2024).

regulations that contemplate a matter being reserved for "judicial review" prior to specified claims being appropriately considered for FCIC determination, as described below.[6]

The FCIC's preemption regulations at 7 C.F.R. Part 400 Subpart P provide that, as a "condition precedent" to pursing a claim for extra-contractual damages against an approved insurance provider based on actions or omissions arising in the administration of a federal crop insurance policy, the policyholder must first obtain a determination of non-compliance from the FCIC.[7]  7 C.F.R. § 400.352; s*ee J.O.C. Farms, LLC v. Fireman's Fund Ins. Co.*, 737 F. App'x. 652, 655 (4th Cir. 2018).   When ProAg moved for confirmation of the Arbitration Award, it also moved for summary judgment because Dupree Farms had not obtained such authorization.   After ProAg filed its motion but prior to a hearing on the motion, Dupree Farms requested the FCIC to authorize extra-contractual damages. Finding that the summary judgment motion was premature because the FCIC had not then responded to Dupree Farms' request, ProAg's motion for summary judgment was denied without prejudice *(*Dkt. 76).

---

[6]Judicial review as requested here is contemplated by the Policy and the applicable regulations, but such review is separate and distinct from review of an arbitration award as contemplated by the Federal Arbitration Act. 9 U.S.C. § 1 et seq. The Supreme Court case of *Badgerow v. Walters,* 596 U.S. 1 (2022) and the Fourt Circuit's recent extension of *Badgerow*'s holding in *SmartSky Networks, LLC v. DAG Wireless, LTD.,* 93 F.4th 175 (4th Cir. 2024), are inapplicable to the claims currently before the court.

[7] The Regulations prohibit state or local governmental entities, and non-governmental entities, from:

> (4) Levy[ing] fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or Federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation (Nothing herein precludes such damages being imposed against the company if a determination is obtained from FCIC that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled);

7 C.F.R. § 400.352.

On January 7, 2022, Dupree Farms filed an amended complaint adding the "judicial review" component (A.P. Dkt. 77, the "Amended Complaint"). ProAg filed a timely amended answer (A.P. Dkt. 79). A discovery scheduling order (A.P. Dkt. 84) was subsequently entered.

On July 20, 2022, the FCIC notified Dupree Farms of its finding that it had no authority to issue a determination under Subpart P, (the "No Authority Finding") specifically because there was no provision in the Policy permitting such a determination or allowing a farmer to pursue such damages despite the regulations contemplating such a policy provision and other policies having contained such a provision. Dupree Farms appealed the No Authority Finding to the USDA National Appeals Division ("NAD").   On July 29, 2022, Dupree Farms again moved to amend its pleadings, this time to conform the allegations to the evidence deduced during discovery.   On August 22, 2022, the court entered an order staying all discovery deadlines until January 2023 to allow the appeal to proceed at the agency (A.P. Dkt. 99).   On August 26, 2022, a Consent Order was entered allowing plaintiff leave to amend the complaint (A.P. Dkt. 101).   Dupree Farms then filed its Second Amended Complaint on August 31, 2022 (A.P. Dkt. 102, the "Second Amended Complaint"), again alleging claims for (1) negligent misrepresentation; (2) intentional misrepresentation; (3) violation of the North Carolina Deceptive Trade Practices Act; and (4) judicial review. ProAg timely filed an amended answer (A.P. Dkt. 105). On January 23, 2023, Dupree Farms moved to cancel the litigation stay and proceed to prosecute this adversary proceeding, which request was granted on February 21, 2023 (A.P. Dkt. 118).   An updated pre-conference report was filed by the parties on March 7, 2023, and the court entered a scheduling order on March 8, 2023.

Shortly thereafter, an administrative judge with the NAD upheld the No Authority Finding by order dated March 24, 2023 (A.P. Dkt. 128, Ex. 9). Dupree Farms appealed that administrative

judge decision to the NAD Director, Frank M. Wood.  On June 2, 2023, Director Wood upheld the NAD administrative judge's appeal determination, noting that his determination was "a final order of the Department of Agriculture and concludes all administrative processing of your appeal." (A.P. Dkt. 129, Ex. 10.)  Consequently, on July 27, 2023, ProAg revived its motion for summary judgment, arguing that Dupree Farm's claims herein are barred and preempted by FCIC determinations confirmed in the administrative appeals process.

Following the final NAD decision, on June 30, 2023, Dupree Farms filed a complaint in the United States District Court for the Eastern District of North Carolina against defendants United States Department of Agriculture, RMA, and FCIC (collectively the "Agency Defendants") (*Dupree Farms v. USDA, et al.*, 5:23-CV-360-M-RJ, the "District Court Case").  In that action, Dupree Farms contends it has exhausted all its administrative remedies and seeks de novo review as a matter of right pursuant to 5 U.S.C. § 706, asserting that the refusal of the Agency Defendants to issue a determination is arbitrary and capricious, contrary to controlling law, and unsupported by substantial evidence. On August 24, 2023, Dupree Farms filed a motion for direct reference of that matter to the bankruptcy court (Dist. Ct. Dkt. 8)[8] for joinder here. The Agency Defendants objected, and on October 20, 2023, that motion was denied by the District Court (Dist. Ct. Dkt. 16).  On November 16, 2023, in the District Court Case, the Agency Defendants filed a motion to dismiss and for judgment on the pleadings, which matter remains pending.

---

[8] For reference purposes, citations marked "Dist. Ct. Dkt. #" refer to the District Court Case (5:23-CV-360-M-RJ).

## DISCUSSION

### I.    Standard of Review

ProAg moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy.  A party is entitled to summary judgment if the undisputed facts established in the record demonstrate there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he court must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant ...." *Humboldt Express, Inc. v. The Wise Co. (In re Apex Express Corp.)*, 190 F.3d 624, 633 (4th Cir. 1999) (citations omitted). The moving party has the initial burden of proving the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the initial burden is met, the opposing party must respond and show the existence of factual disputes sufficient to advance a genuine issue to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The trial court should decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

### II.    Analysis

#### A.  Conflict Preemption and the Controlling Regulations

To understand the agency's No Authority Finding, a review of the relevant regulations and policy provisions is required. Federal crop insurance policies "are not typical private insurance agreements." *Williamson Farm v. Diversified Crop Ins. Servs.*, 917 F.3d 247, 249 (4th Cir.

2019).  "[E]ach contract is 'between a farmer and an insurance provider,' but 'the FCIC determines the terms and conditions' of the policy." *Bachman Sunny Hill Fruit Farms, Inc. v. Producers Agric. Ins. Co.*, 57 F.4th 536, 538-39 (6th Cir. 2023) (quoting *Balvin v. Rain & Hail, LLC*, 943 F.3d 1134, 1136 (8th Cir. 2019)). As the agency charged with regulating the federal crop insurance program, the FCIC has enacted a "regulatory scheme [that] balances the need for crop insurance as a way to promote and stabilize agriculture markets with the risk inherent in offering these policies *by limiting the remedies available to claimants under the program*." *Williamson Farm v. Diversified Crop Ins. Servs.,* No. 5:17-CV-513-D, 2018 WL 1474068, at *2 (E.D.N.C. Mar. 26, 2018), aff'd, 917 F.3d 247 (4th Cir. 2019) (emphasis added).

All policies of insurance insured or reinsured by FCIC are governed by regulations which preempt state laws and regulations not consistent with the Federal Crop Insurance Act, 7 U.S.C. § 1501 et seq.  Among the preemptive regulations, 7 C.F.R. § 400.352 prohibits "State or local governmental entities or non-governmental entities" from levying:

> fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or Federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation. . . .

7 C.F.R. § 400.352. In addition to these regulations, the FCIC has also included preemption language in all insurance contracts authorized under the Act. For the Policy at issue, that preemption language is found in sections 33(f) and 37, which provide:

> **33. Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review.**
> …
> > (f)   In any  mediation, arbitration, appeal, administrative review, reconsideration or judicial process, the terms of this policy, the Act, and the regulations published at 7 CFR chapter IV, including the provisions

12

of 7 CFR part 400, subpart P, <u>are binding</u>.  Conflicts between this policy and any state or local laws will be resolved in accordance with section 37.  If there are conflicts between any rules of the AAA and the provisions of your policy, the provisions of your policy will control.

(A.P. Dkt 128, Ex. 1, p. 40 (emphasis added)).

### 37.   Applicability of State and Local Statutes.

If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail.  <u>State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy.</u>

*Id.*, p. 46 (emphasis added).

Under its plain language, subpart P is "applicable to all policies of insurance, insured or reinsured by the Corporation," (7 C.F.R. § 400.351) which encompasses all policies authorized under the Act, including the subject WFRP policy (as specifically set forth in section 33(f) of the WFRP Pilot Policy).  Section 400.352(a) precludes any state or local governmental entity from enacting laws that "<u>directly or indirectly affect</u> or govern <u>agreements, contracts, or actions</u> authorized by this part unless such authority is specifically authorized by this part or by the Corporation."  (*Id.*, emphasis added). This prohibition applies to any state or local laws that would directly or indirectly impact a federal crop policy.

However, the regulations do not completely prohibit such damages from being awarded, as a portion of section 400.352(b)(4) provides:

<u>Nothing herein precludes such damages being imposed against the company if a determination is obtained from FCIC</u> that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled.

7 C.F.R. § 400.352(b)(4) (emphasis added).

Thus, according to Subpart P, the only manner by which an Approved Insurance Provider such as defendant ProAg can be assessed extra-contractual damages in connection with the issuance or administration of a federal crop insurance policy is if the farmer obtains preauthorization (in the form of an express determination of non-compliance) from the FCIC.

### B.  The No Authority Finding and the Policy

As noted above, on October 19, 2021, Dupree Farms requested such a determination from FCIC in accordance with 7 C.F.R. § 400.352(b)(4). On July 20, 2022, the FCIC Office of Compliance issued the No Authority Finding concluding that the 2018 WFRP Pilot Policy does not allow for issuance of a non-compliance determination:

> In your request, Dupree Farms sought a determination from the Deputy Administrator of Compliance (DAC) that Producers Ag Management, Inc. failed to comply with the 2018 WFRP Policy and applicable Federal Crop Insurance Corporation procedures, that resulted in Dupree Farms receiving payment in an amount less than it was entitled to receive.
>
> Regretfully, the 2018 WFRP Policy, which the arbitration was based on, does not have a contract provision that authorizes the DAC to provide such a determination. As a result, the DAC cannot issue a determination for this case. If you intend to pursue judicial review, you must do so without a determination from the DAC.

(A.P. Dkt. 128, Ex. 8.)

While the language of Section 33(h) of the Policy, like the language of Section 33(a) through (g), tracks the language of the multiple peril crop insurance policy ("MPCI") *Basic Provisions* in Section 20(a) through (h), the Policy at issue in this case does not include the equivalent of Section 20(i) of the *Basic Provisions,* which provides:

> (i)     In a judicial review only, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us only if you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount

> to which you were entitled. Requests for such a determination should be addressed to the following: USDA/RMA/Deputy Administrator of Compliance/ Stop 0806, 1400 Independence Avenue, SW., Washington, D.C. 20250- 0806.

*See* A.P. Dkt. 133, Plaintiff's Exhibit 30 (*Basic Provisions*) at ¶20(i); 7 C.F.R. § 457.8.  In contrast, Section 33(i) of the Policy tracks Section 20(k) of the *Basic Provisions*, and reads as follows:

> (i) Any determination made by FCIC that is a matter of general applicability is not subject to administrative review under 7 CFR part 400, subpart J or appeal under 7 CFR part 11. If you want to seek judicial review of any FCIC determination that is a matter of general applicability, you must request a determination of non-appealability from the Director of the National Appeals Division in accordance with 7 CFR 11.6 before seeking judicial review.

*See* A.P. Dkt. 133*,* Plaintiff's Exhibit 8 (WFRP Policy) at ¶33(i); *cf.* Plaintiff's Exhibit 30 (*Basic Provisions*) at ¶20(k).

However, for reasons unknown to the court, Basic Provisions 20(i) and (j) were omitted from and do not appear in the WFRP Policy at issue. This language does appear in the 2019 WFRP policy as subsection 33(j). Even though the 2018 version of the *Whole Farm Revenue Protection Policy* does not include the language of Section 20(i) of the *Basic Provisions* (codified at 7 C.F.R. §457.8), as discussed above, the regulations provide:

> (b) The following is a non-inclusive list of examples of actions that State or local governmental entities or non-governmental entities are specifically prohibited from taking against the Corporation or any party that is acting pursuant to this part. Such entities may not:

> (4) Levy fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or Federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation ***(Nothing herein precludes such damages being imposed against the company if a determination is obtained from FCIC that the company, its employee, agent or loss adjuster failed to comply with the***

15

> *terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled); . . .*

7 C.F.R. §400.352(b)(4) (emphasis added).

RMA has consistently equated the provisions of 7 C.F.R. §400.352(b)(4) and those of Section 20(i) of the *Basic Provisions. See, e.g.,* FAD-193 (citing to both Section 20(i) and 7 C.F.R. §400.351, et seq.), FAD-240 (citing 7 C.F.R. §400.176 "and the equivalent language in section 20(i) of the Basic Provisions"), FAD-251. Basic Provision 20(i) requires a determination from FCIC prior to recovering damages.[9]  The regulations in effect in 2018 further state:

> No policy of insurance reinsured by the [FCIC] and no claim, settlement, or adjustment action with respect to any such policy shall provide a basis for a claim of punitive or compensatory damages or an award of attorney fees or other costs against the Company issuing such policy, unless a determination is obtained from the [FCIC] that the Company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by the [FCIC] and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled.
> 7 C.F.R. § 400.176(b) (2018).  See also 7 C.F.R. § 400.352(b)(4) (preempting state laws, regulations, or decisions levying damages, fees, or costs against companies "arising out of actions or inactions on the part of such ... entities authorized or required under the [FCIA or the FCIC regulations]" absent FCIC predetermination).

In sum, in the No Authority Finding, the Agency found that while the regulations require a determination in order for Dupree to seek damages, the Policy here did not allow them to make the required determination, resulting in the No Authority Finding.

### 1. Preemptive Effect of the Regulations

Courts have given federal regulations the same preemptive effect as federal statutes. *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 554 (4th Cir. 2013) (*citing Fid. Fed.*

---

[9] "In a judicial review only, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us only if you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled."  7 C.F.R. § 457.8 ¶ 20(i).

*Sav. & Loan Ass'n. v de la Cuesta*, 458 U.S. 141, 153 (1982)).  In determining preemptive effect, a court must determine "'whether the [agency] meant to pre-empt [state] law, and, if so, whether that action is within the scope of the [agency's] delegated authority.'" *Weadon v. Producers Agric. Ins. Co.*, No. 1:24-CV-116, 2024 WL 1603678, at *3 (M.D.N.C. Apr. 12, 2024) (quoting *de la Cuesta*, 458 U.S. at 153).[10] Specifically, in FAD- 251, the Agency found:

> [A]ny claim, including a claim for extra-contractual damages, that arises under or is related to a Federal crop insurance policy issued pursuant to the Federal Crop Insurance Act (Act) may only be awarded if a determination is obtained from FCIC in accordance with section 20(i) of the Common Crop Insurance Policy Basic Provisions and §400.352. As previously provided in FAD-240, FCIC also agrees that 7 C.F.R. § 400.352 pre-empts any State law that would allow a claim for extra-contractual damages that conflicts with the provision in section 400.352 that any extra-contractual damages can only be awarded if FCIC makes a determination that the AIP, agent, or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC. To the extent that State courts award extra-contractual damages without first obtaining a determination from FCIC, such awards are not in accordance with 7 C.F.R. § 400.352 and FCIC regulations.

*See* FAD-251, citing FAD-240.

Based on the implementing regulations and the FADs, ProAg contends that because the agency made the No Authority Finding, Dupree Farms cannot pursue extra-contractual damages and summary judgment should be entered for it. In short, the regulations preempt state law, and because Dupree Farms did not get permission from the agency to pursue such damages, its claims are barred and preempted, even though the agency found it was unable to make a finding.[11]

In its Response, Dupree Farms contends it is entitled to proceed with its tort claims in the first four counts of the Second Amended Complaint without a determination from the agency (Dkt.

---

[10] Under the recent decision of *Loper Bright Enterprises v. Raimondo,* 144 S. Ct. 2244 (2024), the limits of an administrative agency's statutory authority are now a justiciable issue. However, that question has not been raised here, nor could it be as the Agency Defendants are not a party to this action.  Further, *Loper* specifically acknowledged that prior decisions relying on the Chevron framework are subject to statutory stare decisis. *Id.* at 2273.

[11] On appeal to the District Court, Dupree Farms asserts that the No Authority Finding was arbitrary and capricious. This bankruptcy court holds no jurisdiction to consider that question.

133, Ex. 3). Dupree Farms argues that claims sounding in tort are not preempted by the Federal Crop Insurance Act (FCIA) and the federal regulations, even where the insured failed to seek arbitration and did not seek a determination from FCIC/RMA as contemplated by Section 20(i) of the Basic Provisions and 7 C.F.R. § 400.352(b).  Additionally, based on the statement of an agency official during a hearing, Dupree Farms also contends that RMA has changed its position and that Dupree Farms can pursue judicial review without a determination. However, beyond the comment by the agency official, there is no evidentiary support for this argument.

## 2. *Dixon/Pelzer/Plants* Cases

As to the lack of preemption argument, Dupree Farms cites *Dixon v. Producers Agric.  Ins. Co.,* 198 F. Supp. 3d 832 (M.D. Tenn. 2016), in which the district court found that extracontractual claims for misrepresentation under state law were not preempted by FCIA, federal regulations, or the policy terms of a MPCI policy. *Dixon* concerned the issue of eligibly of certain lands for coverage under MPCI policies. For a burley tobacco crop to be eligible for coverage, an insurable crop must have been grown on the land in question one year within the prior three years. A representative of ProAg spoke at an organized dinner and told plaintiffs that if they had raised a hay crop on the subject land one year within the last three years then it would qualify for burley tobacco insurance.  This statement was confirmed in an email after the event.

In reliance, plaintiffs planted burley tobacco and obtained MPCI Policies from ProAg but did not seek a written agreement with RMA as required if the "one in three" requirement had not been met.  A loss subsequently occurred, and initially the claim was approved and paid. However, ProAg later demanded repayment because the plaintiffs had not met the "one in three" requirement and did not have a written agreement as required by the policy provisions in such circumstances. Plaintiffs brought suit for negligent misrepresentation and intentional misrepresentation. The court

held, "[i]n order to avoid preemption, Plaintiffs must show damages that are unrelated [to] the insurance policy because federal law preempts state-law claims regarding issues that involve a policy or procedure interpretation." *Dixon*, 198 F. Supp. 3d at 841.

ProAg argues *Dixon* is distinguishable because the claims in that action involved conduct that pre-dated the policies and thus arguably did not arise under or in relation to a reinsured policy but rather is a challenge regarding servicing of an existing policy. Dupree Farms argues that the claims, although sounding in tort, are not "related to" the policy, as the dispute is over whether ProAg is liable for alleged misrepresentations regarding the applicable expanded operations factor, 1.35 or 1.17, under the Policy.

In response, Dupree Farms relies on *Pelzer v. ARMtech Ins. Servs., Inc.*, 928 F. Supp. 2d 1071, 1078–79 (E.D. Ark. 2013), which held that claims for negligence, misrepresentation, and fraud were not preempted because they did not arise from the policy itself but rather from torts arising prior to or outside the scope of the policy.  Both *Dixon* and *Pelzer* relied on an earlier decision from the Tennessee Court of Appeals, *Plants, Inc. v. Fireman's Fund Ins. Co*, 2012 Tenn. App. LEXIS 561 (Aug. 13, 2012). While these cases distinguish between contract and tort, they make determinations regarding whether representations are made within or outside the policy. However, since those cases were decided, the *Plants* position has been written out of and is no longer in accord with standard policy terms and regulations:

> The requester notes that recent case law from the Tennessee Court of Appeals (*Plants, Inc. v. Fireman's Fund Ins. Co.*, 2012 Tenn. App. LEXIS 561 (Tenn. Ct. App. Aug. 13, 2012), as well as another civil action between the same two parties, *Plants, Inc. v. Fireman's Fund Ins. Co.*, 2012 Tenn. App. LEXIS 562 (Tenn. Ct. App. Aug. 13, 2012)) found that 7 CFR §400.352(b)(4) did not apply when a policyholder seeks extra-contractual damages for alleged negligence or misrepresentations regarding the policy or the applicability of a policy to a crop. The requester believes that the court's interpretation of 7 CFR §400.352(b)(4) in the *Plants* cases is wrong, and that the requester's interpretation above is the correct one. FCIC recently agreed in FAD-240 that the *Plants* decisions were incorrect

because they were counter to 7 CFR §400.176 and the policy terms. Those *Plants* decisions are also incorrect because they are counter to §400.352.

FAD-251. (See also FAD-240).

Further, in 2018, FAD-280 was issued which clarified:

The provisions contained in 7 C.F.R. § 400.176(b), and the equivalent language in section 20(i) of the Basic Provisions, preempts any state law claims that are in conflict. That means that to the extent that State law would allow a claim for extra-contractual damages, such State law is pre-empted and extra-contractual damages can only be awarded if FCIC makes a determination that the AIP, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by the Corporation and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled. Therefore, this means that state law claims may be possible but recovery of extra-contractual damages is limited and the determination from FCIC must first be obtained.

In accordance with 7 C.F.R. § 400.765 (c), this Final Agency Determination is binding on all participants in the Federal crop insurance program for the crop years the policy provisions are in effect. Any appeal of this decision must be in accordance with 7 C.F.R. § 400.768(g).

FAD-280.

Dupree Farms contends that the Fourth Circuit approved the *Plants/Dixon/Pelzer* line of reasoning in *J.O.C. Farms, LLC v. Fireman's Fund Ins. Co.*, 737 Fed. App. 652 (4th Cir. 2018).  It maintains that because the tort claims in *JOC Farms* were dismissed for failure to state a claim, not for preemption like the breach of contract claim, the *Plants/Dixon/Pelzer* cases have been cited with approval by the Fourth Circuit and the Eastern District of North Carolina. It contends that the regulations were not intended to foreclose state law claims completely.

This reliance on JOC Farms is misplaced, as ProAg's preemption argument is based on *conflict* preemption, not complete preemption. Neither the courts nor FSA have asserted that the regulations completely preempt state law. The preemption arguments analyzed herein are not based on complete preemption, but rather on the conflict between the regulations and state law.

As JOC observes, numerous courts have held that the FCIA and its regulations do not completely preempt state law causes of action. *See, e.g., Williams Farms of Homestead, Inc. v. Rain & Hail Ins. Servs., Inc.*, 121 F.3d 630, 633 (11th Cir. 1997); *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 669 (9th Cir. 1993); *Wanamaker v. Lawson*, 871 F.Supp.2d 735, 742-43 (E.D. Tenn. 2012); *Agre v. Rain & Hail LLC*, 196 F.Supp.2d 905, 911-12 (D. Minn. 2002). *But see Owen v. Crop Hail Mgmt.*, 841 F.Supp. 297, 304 (W.D. Mo. 1994) (recognizing complete preemption); *Brown v. Crop Hail Mgmt.*, 813 F.Supp. 519, 526 (S.D. Tex. 1993) (same). However, these authorities provide limited assistance to JOC, as both the district court's holding and the Insurance Defendants' argument rely only on ordinary conflict preemption. *See Johnson v. Am. Towers, LLC*, 781 F.3d 693, 702 (4th Cir. 2015) (distinguishing between complete and ordinary preemption).

Congress has authorized the preemption of state laws or rules that conflict with regulations promulgated and contracts authorized by the FCIC. 7 U.S.C. § 1506(l); *see also* 7 U.S.C. § 1506(o) (FCIC power to issue regulations). Pursuant to this authority, the FCIC has promulgated regulations, applicable to all insurance policies that it reinsures, preempting "[s]tate laws and regulations not consistent with the purpose, intent, or authority of the [FCIA]." 7 C.F.R. § 400.351 (2018); *see* 7 C.F.R. § 400.352 (2018).

*J.O.C. Farms,* 737 F. App'x at 654.

## C.  The parties are bound by applicable regulations and findings.

Both parties here are bound by the implementing agency regulations.  "In cases involving federally reinsured crop insurance, the insurance contract forms only one part of the agreement between the parties." *Williamson Farm*, No. 5:17-CV-513-D, 2018 WL 1474068, at *4.  They must accept favorable and unfavorable treatment as all participants in the crop insurance market are acutely aware that federally reinsured policies come with strings attached—including as is the case here, the implementing regulations.

Because insurance policies issued by private insurers must comply with the FCIA and accompanying regulations to qualify for reinsurance through the FCIC, "the FCIA generally establishes the terms and conditions of insurance even though the crop insurance policy is between the farmer and an approved insurance provider." *Davis v. Producers Agric. Ins. Co.*, 762 F.3d 1276, 1284 (11th Cir. 2014) (alterations and internal quotation marks omitted). The terms and conditions of the MPCI policies are promulgated by the FCIC as regulations. *See* 7 C.F.R. §§ 457.8 to .176 (2018). At issue in this appeal, the Common Crop Insurance Policy ("CCIP"), codified at 7 C.F.R. § 457.8, applies to policies insuring most crops. As

21

the terms and conditions of the CCIP are promulgated in the Federal Register, they are "binding on all who s[eek] to come within the [FCIA], regardless of actual knowledge of what is in the Regulations or of the hardship resulting from ignorant innocence." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

*J.O.C. Farms,* 737 F. App'x at 654.

Dupree Farms contends that, even in light of *J.O.C. Farms*, claims sounding in tort are not sufficiently "related to" the Policy to block an independent claim against ProAg (but not the FSA) for alleged misrepresentations regarding the expansion factor amount. However, as the District Court here has previously recognized, in entering into the crop insurance market, a party cannot pick and choose which regulations are beneficial while rejecting those detrimental to its position.

The FCIC determines "where crop insurance will be offered and on what crops, the levels of coverage, the expected market prices for crops, premium rates paid to insurers and the lack of insurability of certain risks." Id. at 1284–85. "The FCIC provides, as necessary, interpretations of the statute and regulations to interested parties." Id. at 1285. "The FCIC's interpretations, issued in the form of Final Agency Determinations ("FADs"), are 'binding on all participants in the Federal crop insurance program.'" Id. (quoting 7 C.F.R. § 400.765(c)). Additionally, the FCIC regulatory scheme preempts state law to the extent that the two conflict. See General Administrative Regulations; Crop Insurance; Preemption of State Laws and Regulations, 55 Fed. Reg. 23066-01, 23067, 1990 WL 342216 (June 6, 1990); 7 U.S.C. §§ 1501, 1506(1); 7 C.F.R. §§ 400.351–52. The FCIC regulatory scheme balances the need for crop insurance as a way to promote and stabilize agriculture markets with the risk inherent in offering these policies by limiting the remedies available to claimants under the program.

*Williamson Farm,* No. 5:17-CV-513-D, 2018 WL 1474068, at *2.

Per the regulations, a determination from the FCIC is the pre-requisite for eligibility to pursue extra-contractual damages. *Wanamaker Nursery, Inc. v. John Deere Risk Prot., Inc.*, 364 F. Supp. 3d 839, 849 (E.D. Tenn. 2019) ("Applying that provision, the Wanamakers were required to obtain authorization from the FCIC before making any bad faith claim for damages. It is uncontroverted that they failed to do so, and the policies' relevant provision preempts state law. For those reasons, the Court will dismiss the Wanamaker's bad faith claim under Tennessee law.")

*See also Sunset Ranches, Inc. v NAU Country Insurance Co.*, Case NO. F078916 (Cal. 5th Dist. Aug. 16, 2021) (unpublished).

## CONCLUSION

It is undisputed that Dupree Farms has not received the necessary determination. The implementing regulations are binding on the crop insurance market and apply holistically, not in part. Dupree Farms cannot pick and choose to retain the beneficial while rejecting those harmful to its position. The legality of the Agency's No Authority Finding is not before this court. [12]   As a result, Dupree Farms cannot proceed on the claims remaining in this adversary proceeding without first receiving preauthorization (in the form of an express determination of non-compliance) from the FCIC, which it has not been able to produce and accomplish.

Having found that the binding regulations require that Dupree Farms receive a determination from the agency, and it being undisputed that they have not received such a determination, ProAg's motion for summary judgment must be granted as a matter of law. A separate order will be entered effectuating the grant of ProAg's motion for summary judgment (A.P. Dkt. 128) and dismissing Dupree Farm's claims against it in the adversary proceeding.

## END OF DOCUMENT

---

[12]    Whether or not the No Authority Finding was arbitrary and capricious, or is otherwise challengeable under *Loper*, is not an issue presentable in this adversary proceeding as, unlike the District Court Case, the Agency Defendants are not parties in this adversary proceeding. Therefore, this court has no authority to substitute itself for and make determinations on behalf of the Agency Defendants.